B 27 (Official Form 27) (12/09)

# UNITED STATES BANKRUPTCY COURT

Eastern District of New York

In re Ada & Edwin Serrano _____,
*Debtor*

Case No. 11-49113 _____
Chapter 7 ____

## REAFFIRMATION AGREEMENT COVER SHEET

This form must be completed in its entirety and filed, with the reaffirmation agreement attached, within the time set under Rule 4008. It may be filed by any party to the reaffirmation agreement.

1.  Creditor's Name: Sovereign Bank _____

2.  Amount of the debt subject to this reaffirmation agreement:
    $ 21,703.67 on the date of bankruptcy  $ 21,228.96 to be paid under reaffirmation agreement

3.  Annual percentage rate of interest: 5.49 % prior to bankruptcy
    5.49 % under reaffirmation agreement ( ✓ Fixed Rate ___ Adjustable Rate)

4.  Repayment terms (if fixed rate): $ 542.38 per month for ____ 43 months

5.  Collateral, if any, securing the debt: Current market value: $ _____
    Description: 77 Seymour Avenue Staten Island NY _____

6.  Does the creditor assert that the debt is nondischargeable? ___ Yes ✓ No
(If yes, attach a declaration setting forth the nature of the debt and basis for the contention that the debt is nondischargeable.)

| Debtor's Schedule I and J Entries | Debtor's Income and Expenses as Stated on Reaffirmation Agreement |
|---|---|
| 7A. Total monthly income from $ 4267.30 Schedule I, line 16 | 7B. Monthly income from all $ 4267.30 sources after payroll deductions |
| 8A. Total monthly expenses $ 4642.— from Schedule J, line 18 | 8B. Monthly expenses $ 4642.00 |
| 9A. Total monthly payments on $ Ø reaffirmed debts not listed on Schedule J | 9B. Total monthly payments on $ Ø reaffirmed debts not included in monthly expenses |
| | 10B. Net monthly income $ (-374.70) (Subtract sum of lines 8B and 9B from line 7B. If total is less than zero, put the number in brackets.) |

B27 (Official Form 27) (12/09)                                                                    Page 2

11.    Explain with specificity any difference between the income amounts (7A and 7B):

_____ *N/A* _____

12.    Explain with specificity any difference between the expense amounts (8A and 8B):

_____ *N/A* _____

If line 11 or12 is completed, the undersigned debtor, and joint debtor if applicable, certifies that any
explanation contained on those lines is true and correct.

*N/A*

_____          _____
Signature of Debtor (only required if          Signature of Joint Debtor (if applicable, and only
line 11 or 12 is completed)          required if line 11 or 12 is completed)

## Other Information

☑    Check this box if the total on line 10B is less than zero. If that number is less than zero, a presumption
of undue hardship arises (unless the creditor is a credit union) and you must explain with specificity the
sources of funds available to the Debtor to make the monthly payments on the reaffirmed debt:

_____ *We Are Working on lowering all other expenses* _____
_____

Was debtor represented by counsel during the course of negotiating this reaffirmation agreement?
          _✓_Yes                    _____No

If debtor was represented by counsel during the course of negotiating this reaffirmation agreement, has
counsel executed a certification (affidavit or declaration) in support of the reaffirmation agreement?
          _✓_Yes                    _____No

## FILER'S CERTIFICATION

I hereby certify that the attached agreement is a true and correct copy of the reaffirmation agreement
between the parties identified on this Reaffirmation Agreement Cover Sheet.

*Wanda Hahn*

Signature

Wanda Hahn-Sovereign Bank
Print/Type Name & Signer's Relation to Case

B240A (Form B240A) (04/10)

Check one.
☒ **Presumption of Undue Hardship**
☐ **No Presumption of Undue Hardship**
*See Debtor's Statement in Support of Reaffirmation,
Part II below, to determine which box to check.*

# UNITED STATES BANKRUPTCY COURT

Eastern District of New York

Ada & Edwin Serrano
In re _____,                    Case No. 11-49113
                    *Debtor*
                                                           Chapter 7

## REAFFIRMATION DOCUMENTS

**Name of Creditor:** Sovereign Bank

☐ Check this box if Creditor is a Credit Union

## PART I. REAFFIRMATION AGREEMENT

**Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation
Agreement, you must review the important disclosures, instructions, and definitions found in Part V of
this form.**

A. Brief description of the original agreement being reaffirmed: Real Estate Loan

*For example, auto loan*

B. *AMOUNT REAFFIRMED*:     $            21,228.96

The Amount Reaffirmed is the entire amount that you are agreeing to pay.  This may include
unpaid principal, interest, and fees and costs (if any) arising on or before    11/18/2011    ,
which is the date of the Disclosure Statement portion of this form (Part V).

*See the definition of "Amount Reaffirmed" in Part V, Section C below.*

C. The *ANNUAL PERCENTAGE RATE* applicable to the Amount Reaffirmed is    5.49 %.

*See definition of "Annual Percentage Rate" in Part V, Section C below.*

This is a *(check one)* ☑ Fixed rate          ☐ Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate
disclosed here.

D. Reaffirmation Agreement Repayment Terms *(check and complete one)*:

☑    $ __542.38__ per month for ___43___ months starting on __12/05/2011__ .

☐    Describe repayment terms, including whether future payment amount(s) may be different from the initial payment amount.

E. Describe the collateral, if any, securing the debt:

       Description:            __77 Seymour Ave. Staten Island NY__
       Current Market Value    $_____

F. Did the debt that is being reaffirmed arise from the purchase of the collateral described above?

☐ Yes. What was the purchase price for the collateral?      $_____

☑ No. What was the amount of the original loan?      $ _____50,000.00__

G. Specify the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

|  | Terms as of the Date of Bankruptcy | Terms After Reaffirmation |
|---|---|---|
| Balance due *(including fees and costs)* | $_____ | $_____ |
| Annual Percentage Rate | _____% | _____% |
| Monthly Payment | $_____ | $_____ |

H. ☐   Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit:

## PART II.    DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

A. Were you represented by an attorney during the course of negotiating this agreement?

     Check one.   ☑ Yes    ☐ No

B. Is the creditor a credit union?

     Check one.   ☐ Yes   ☑ No

B240A, Reaffirmation Documents                                                                 Page 3

C. If your answer to EITHER question A. or B. above is "No," complete 1. and 2. below.

1.  Your present monthly income and expenses are:

    a. Monthly income from all sources after payroll deductions
    (take-home pay plus any other income)                              $ _4267.30_

    b. Monthly expenses (including all reaffirmed debts except
    this one)                                                          $ _4099.62_

    c. Amount available to pay this reaffirmed debt (subtract b. from a.)   $ _167.68_

    d. Amount of monthly payment required for this reaffirmed debt      $ _542.38_

    *If the monthly payment on this reaffirmed debt (line d.) **is greater than** the amount you have available to pay this reaffirmed debt (line c.), you must check the box at the top of page one that says "Presumption of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No Presumption of Undue Hardship."*

2.  You believe that this reaffirmation agreement will not impose an undue hardship on you or your dependents because:

    Check one of the two statements below, if applicable:

    ☐            You can afford to make the payments on the reaffirmed debt because your monthly income is
                 greater than your monthly expenses even after you include in your expenses the monthly
                 payments on all debts you are reaffirming, including this one.

     You can afford to make the payments on the reaffirmed debt even though your monthly income
                 is less than your monthly expenses after you include in your expenses the monthly payments on
                 all debts you are reaffirming, including this one, because: _We Are Working on lowering_
                 _All other expenses._

    

    Use an additional page if needed for a full explanation.

D. If your answers to BOTH questions A. and B. above were "Yes," check the following
statement, if applicable:

    ☐            You believe this Reaffirmation Agreement is in your financial interest and you can afford to
                 make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

B240A, Reaffirmation Documents

## PART III. CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES

I hereby certify that:

(1)    I agree to reaffirm the debt described above.

(2)    Before signing this Reaffirmation Agreement, I read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

(3)    The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

(4)    I am entering into this agreement voluntarily and am fully informed of my rights and responsibilities; and

(5)    I have received a copy of this completed and signed Reaffirmation Documents form.

SIGNATURE(S) (If this is a joint Reaffirmation Agreement, both debtors must sign.):

Date _11/28/11_    Signature _____
                                                *Debtor*
Date _11/28/11_    Signature _____
                                          *Joint Debtor, if any*

### Reaffirmation Agreement Terms Accepted by Creditor:

Creditor _Sovereign Bank_          601 Penn Street Reading PA 19601
         *Print Name*                        *Address*

_Wanda Hahn_                       _Wanda Hahn_          11/18/2011
*Print Name of Representative*       *Signature*            *Date*

## PART IV. CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit Union.*

Date _11/23/11_    Signature of Debtor's Attorney _____
                    Print Name of Debtor's Attorney _KEVIN B ZAZZERA_

## PART V.  DISCLOSURE STATEMENT AND INSTRUCTIONS TO DEBTOR(S)

**Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I above) and these additional important disclosures and instructions.**

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps, which are detailed in the Instructions provided in Part V, Section B below, are not completed, the Reaffirmation Agreement is not effective, even though you have signed it.

### A.    DISCLOSURE STATEMENT

1. **What are your obligations if you reaffirm a debt?** A reaffirmed debt remains your personal legal obligation to pay. Your reaffirmed debt is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Your obligations will be determined by the Reaffirmation Agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may permit the creditor to change the terms of that agreement in the future under certain conditions.

2. **Are you required to enter into a reaffirmation agreement by any law?** No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3. **What if your creditor has a security interest or lien?** Your bankruptcy discharge does not eliminate any lien on your property. A ''lien'' is often referred to as a security interest, deed of trust, mortgage, or security deed. The property subject to a lien is often referred to as collateral. Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you do not pay or default on the debt. If the collateral is personal property that is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4. **How soon do you need to enter into and file a reaffirmation agreement?** If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge. After you have entered into a reaffirmation agreement and all parts of this form that require a signature have been signed, either you or the creditor should file it as soon as possible. The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required. However, the court may extend the time for filing, even after the 60-day period has ended.

5. **Can you cancel the agreement?** You may rescind (cancel) your Reaffirmation Agreement at any time before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your Reaffirmation Agreement is filed with the court, whichever occurs later. To rescind (cancel) your Reaffirmation Agreement, you must notify the creditor that your Reaffirmation Agreement is rescinded (or canceled). Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

6. **When will this Reaffirmation Agreement be effective?**

   a. **If you *were* represented by an attorney during the negotiation of your Reaffirmation Agreement and**

   > i. **if the creditor is not a Credit Union**, your Reaffirmation Agreement becomes effective when it is filed with the court unless the reaffirmation is presumed to be an undue hardship. If the Reaffirmation Agreement is presumed to be an undue hardship, the court must review it and may set a hearing to determine whether you have rebutted the presumption of undue hardship.

   > ii. **if the creditor is a Credit Union**, your Reaffirmation Agreement becomes effective when it is filed with the court.

   b. **If you *were not* represented by an attorney during the negotiation of your Reaffirmation Agreement**, the Reaffirmation Agreement will not be effective unless the court approves it. To have the court approve your agreement, you must file a motion. See Instruction 5, below. The court will notify you and the creditor of the hearing on your Reaffirmation Agreement. You must attend this hearing, at which time the judge will review your Reaffirmation Agreement. If the judge decides that the Reaffirmation Agreement is in your best interest, the agreement will be approved and will become effective. However, if your Reaffirmation Agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home, you do not need to file a motion or get court approval of your Reaffirmation Agreement.

7. **What if you have questions about what a creditor can do?** If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement. If you do not have an attorney helping you, you may ask the judge to explain the effect of this agreement to you at the hearing to approve the Reaffirmation Agreement. When this disclosure refers to what a creditor "may" do, it is not giving any creditor permission to do anything. The word "may" is used to tell you what might occur if the law permits the creditor to take the action.

## B.    INSTRUCTIONS

1. Review these Disclosures and carefully consider your decision to reaffirm. If you want to reaffirm, review and complete the information contained in the Reaffirmation Agreement (Part I above). If your case is a joint case, both spouses must sign the agreement if both are reaffirming the debt.

2. Complete the Debtor's Statement in Support of Reaffirmation Agreement (Part II above). Be sure that you can afford to make the payments that you are agreeing to make and that you have received a copy of the Disclosure Statement and a completed and signed Reaffirmation Agreement.

3. If you were represented by an attorney during the negotiation of your Reaffirmation Agreement, your attorney must sign and date the Certification By Debtor's Attorney (Part IV above).

4. You or your creditor must file with the court the original of this Reaffirmation Documents packet and a completed Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form 27).

5. *If you are not represented by an attorney, you must also complete and file with the court a separate document entitled "Motion for Court Approval of Reaffirmation Agreement" unless your Reaffirmation Agreement is for a consumer debt secured by a lien on your real property, such as your home.* You can use Form B240B to do this.

## C.    DEFINITIONS

1.    **"Amount Reaffirmed"** means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement. The total amount of debt includes any unpaid fees and costs that you are agreeing to pay that arose on or before the date of disclosure, which is the date specified in the Reaffirmation Agreement (Part I, Section B above). Your credit agreement may obligate you to pay additional amounts that arise after the date of this disclosure. You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this disclosure.

2.    **"Annual Percentage Rate"** means the interest rate on a loan expressed under the rules required by federal law. The annual percentage rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges. You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

3.    **"Credit Union"** means a financial institution as defined in 12 U.S.C. § 461(b)(1)(A)(iv). It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| 1013891-9001 | ADA I SERRANO | | 05/06/05 | |
| **NOTE AMOUNT** | **INDEX (w/Margin)** | **RATE** | **MATURITY DATE** | **LOAN PURPOSE** |
| $50,000 00 | Not Applicable | 5.490% | 05/05/15 | Consumer |
| | | Creditor Use Only | | |

## PROMISSORY NOTE AND TRUTH-IN-LENDING DISCLOSURES
(Consumer - Closed End - Fixed Rate)

**DATE AND PARTIES.** The date of this Promissory Note and Truth-in-Lending Disclosures (Note) is May 6, 2005   The parties and their addresses are

**LENDER:**
**INDEPENDENCE COMMUNITY BANK**
909 Broad Street
Newark, New Jersey 07102
Telephone. (973) 286-6601

**BORROWER:**
**ADA I SERRANO**
77 SEYMOUR AVE
STATEN ISLAND, New York 10302

**EDWIN SERRANO**
77 SEYMOUR AVE
STATEN ISLAND, New York 10302

**1. DEFINITIONS.** As used in this Note, the terms have the following meanings·

**A. Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Note, individually and together with their heirs, successors and assigns, and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this Note "You" and "Your" refer to the Lender, with its participants or syndicators, successors and assigns, or any person or company that acquires an interest in the Loan

**B. Note.** Note refers to this document, and any extensions, renewals, modifications and substitutions of this Note.

**C. Loan.** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Note

**D. Property** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

**E. Percent.** Rates and rate change limitations are expressed as annualized percentages

**2. FEDERAL TRUTH-IN-LENDING DISCLOSURES.**

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of my credit as a yearly rate | The dollar amount the credit will cost me. | The amount of credit provided to me or on my behalf | The amount I will have paid when I have made all scheduled payments |
| 5.490% | $15,085.80 | $50,000.00 | $65,085.80 |

**Payment Schedule.** My payment schedule will be.

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 120 | $542 38 | Monthly beginning June 5, 2005 |

**Security** I am giving a security interest in

1 - 4 Family Dwelling, 77 SEYMOUR AVE, SI, NY

My deposit accounts and other rights I may have to the payment of money from you

**Late Charge.** If a payment is more than 15 days late, I will be charged 2.000 percent of the Amount of Payment
**Prepayment.** If I pay off early, I will not have to pay a penalty
**Assumption.** Someone buying the Property securing this obligation cannot assume the remainder of the obligation on the original terms
**Contract Documents.** I will see my contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties

**3. PROMISE TO PAY.** For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, the principal sum of **$50,000.00 (Principal)** plus interest from May 6, 2005 on the unpaid Principal balance until this Note matures or this obligation is accelerated

**4. INTEREST.** Interest will accrue on the unpaid Principal balance of this Note at the rate of **5.490 percent (Interest Rate).**

**A. Post-Maturity Interest.** After maturity or acceleration, interest will accrue on the unpaid Principal balance of this Note at the Interest Rate in effect from time to time, until paid in full

**B. Maximum Interest Amount.** Any amount assessed or collected as interest under the terms of this Note or obligation will be limited to the Maximum Lawful Amount of interest allowed by state or federal law. Amounts collected in excess of the Maximum Lawful Amount will be applied first to the unpaid Principal balance Any remainder will be refunded to me

**C. Statutory Authority.** The amount assessed or collected on this Note is authorized by the New York usury laws under 3 N Y C R R Part 82 and other applicable law

**D. Accrual.** During the scheduled term of this Loan interest accrues using an Actual/Actual days counting method

**5. REMEDIAL CHARGES.** In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment   Additional remedial charges may be described elsewhere in this Note.

**A. Late Charge.** If a payment is more than 15 days late, I will be charged 2.000 percent of the Amount of Payment   I will pay this late charge promptly but only once for each late payment   No late charge will be deducted from my regular installment payment, but will be separately charged and collected

**6. PAYMENT.** I agree to pay this Note in 120 payments   A payment of $542 38 will be due June 5, 2005, and on the 5th day of each month thereafter   A final payment of the entire unpaid balance of Principal and interest will be due May 5, 2015

©1996 Bankers Systems, Inc , St Cloud, MN Exnerst

Initials $AS$ $ES$
Page 1

# AUTOMATIC TRANSFER AUTHORIZATION

**DATE AND PARTIES.** The date of this Automatic Transfer Authorization (Authorization) is May 6, 2005. The parties and their addresses are:

### ACCOUNT HOLDER:
**ADA I SERRANO**
77 SEYMOUR AVE
STATEN ISLAND, New York 10302

**EDWIN SERRANO**
77 SEYMOUR AVE
STATEN ISLAND, New York 10302

### LENDER:
**INDEPENDENCE COMMUNITY BANK**
909 Broad Street
Newark, New Jersey 07102

The pronouns "you" or "your" refer to the Lender. The pronouns "I", "me" and "my" refer to the Account Holder.

### TRANSFER AUTHORIZATION.

**From Debited Account:**
**Account No.** 0376047064
**Account Title.** ADA I SERRANO and EDWIN SERRANO
**Account Type.** Checking

**To Credited Account (Loan):**
**Loan/Account No.** 1013891-9001
**Loan/Account Title.** ADA I SERRANO and EDWIN SERRANO
**Loan/Account Type.**

You will make transfers on the following basis:
**Amount to be Transferred.** $
**Effective Date.** 05/06/2005
**Termination Date.** 05/05/2015
**Frequency.** Monthly

**AMENDMENTS AND TERMINATION.**

I authorize you to charge my Debited Account (Account) for all payments due on the above described Credited Account (Loan). You may continue to charge the Account until the Loan is paid or until I provide you with written notice of cancellation.

I understand and agree that if a payment due date falls on a non-business day, the payment amount will be debited from the Account and credited to the Loan as a loan payment on the next day you are open for regular business.

I further understand and agree that if the Account does not have a sufficient balance on a day that a payment is to be debited from the Account and credited to the Loan, you may, at your option, suspend further efforts to debit the Account and look to me for the payment and all subsequent payments until such time as all payments under the Loan are current. In no event will availability of any credit line that I may have with you be used in determining whether the Account has a sufficient balance.

At your option and sole discretion, you may resume charging the Account without further instruction from me once all payments are current. In the event that you do not resume charging to the Account, you will notify me in writing that this authorization has been cancelled. Such cancellation of this authorization does not excuse me from making timely payment under the terms of the Loan.

In any event, you, at your option, may cancel this authorization at any time.

**SIGNATURES.** By signing, I agree to the terms contained in this Authorization. I also acknowledge receipt of a copy of this Authorization.

**ACCOUNT HOLDER:**

ADA I SERRANO

EDWIN SERRANO

682 707 8019

# ICB Loan Operations Index Page



## Account Number



## 10138919001

TIN Number: **130467865**

Full Name: **SERRANO ADA**

# ICB Loan Operations Document Type Index





## Collateral

## Credit Lenders Service Agency, Inc.

Page 1 of 1

P.O. BOX 508
CHERRY HILL, NJ 08003-0508
(856) 787-9005

### BRINGDOWN REPORT

Date: 09/13/2005

File No : 2365576

I14NY / 4665

Prepared for :   INDEPENDENCE COMMUNITY
909 BROAD ST

Attn: GREG

Case #: 10138919001

NEWARK NJ 07102

RE:    SERRANO, ADA I

SERRANO, EDWIN

77 SEYMOUR AVE
STATEN ISLAND, NY
RICHMOND COUNTY

A Search has been continued in RICHMOND COUNTY  from 02/05/2005 to disclose the recording of
your MORTGAGE in the amount of $50,000.00 on 07/25/2005 in Book 0, Page 0 as Instrument 60245.

The Following Intervening Lien(s) Were Disclosed:

None Disclosed

SEE ATTACHED ORIGINAL

---REPORT COMPLETE---

* THIS REPORT CONTAINS INFORMATION OBTAINED FROM COUNTY PUBLIC RECORDS FOR THE PERIOD OF TIME SPECIFIED ABOVE.
CLSA MAKES NO REPRESENTATION CONCERNING THE ACCURACY OF SAID PUBLIC RECORD INFORMATION.



Office of the
Richmond County Clerk
130  Stuyvesant  Place
Staten Island, NY 10301

Hon. Stephen J. Fiala, County Clerk



ACS-000000000013132-000000000018131-006

## Recording and Endorsement Cover Page

| | | |
|---|---|---|
| Document Id: | 000000000018131 | Document Date: 05/06/2005 | Preparation Date:  07/14/2005 |
| Document Type: | MORTGAGE | | |
| Document Page Count: | 00006 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| CREDIT LENDERS | CREDIT LENDERS |
| PO BOX 508 | PO BOX 508 |
| | |
| CHERRY HILL NJ, 08003 | CHERRY HILL NJ, 08003 |

### PROPERTY DATA       # OF BLOCKS      1      # OF LOTS      1

| Block | Lot | Unit | Address |
|---|---|---|---|
| 1060 | 14 | Entire Lot | 77 SEYMOUR AVE |

Property Type:    Dwelling Only - 1 Family

### PARTIES

| MORTGAGOR INDEX | MORTGAGEE INDEX |
|---|---|
| ADA I SERRANO | INDEPENDENCE COMMUNITY BANK |
| 77 SEYMOUR AVE | 909 BROAD STREET |
| | |
| STATEN ISLAND NY, 10302 | NEWARK NJ, 07102 |

"And Others"

Mortgage Cons:          $50,000.00

### PAYMENT DETAIL

Make Checks Payable to:
=================================================================================
Richmond County Clerk:                    42.00 Recording Fees
Richmond County Clerk:                   995.00 Mortgage Tax
                              --------------------
Total Payments For This Document:        1,037.00
=================================================================================

EXAM          DATE     JUL 3 0 2005

RECORDED IN RICHMOND COUNTY

JUL 2 5 2005

COUNTY CLERK

**LAND DOC# 60245**
24-MORTGAGES
MTAX: CW 12078    $995.00
07/25/2005      10:06:01 A.M.
RECEIPT: 54702   FEE: $42.00
RICHMOND COUNTY CLERK



Space Above This Line For Recording Data

When recorded return to CREDIT LENDERS SERVICE AGENCY, ATTN: PUB. REC. DOC. RECORDING, P.O. BOX 508, CHERRY HILL, New Jersey 08003

**MORTGAGE** *10 1 3 89 1-9001*

**DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is 05/06/2005. The parties and their addresses are:

*22 65 76*

**MORTGAGOR:**
    **ADA I SERRANO**
    77 SEYMOUR AVE
    STATEN ISLAND, New York 10302

    **EDWIN  SERRANO**
    77 SEYMOUR AVE
    STATEN ISLAND, New York 10302

*2339547*

**LENDER:**
    **INDEPENDENCE COMMUNITY BANK**
    Organized and existing under the laws of New York
    909 Broad Street
    Newark, New Jersey 07102
    11-1350490

**1. CONVEYANCE.** For good and valuable consideration, ~~wledged,~~
and to secure the Secured Debts and Mortgagor's perform ~~or grants,~~
bargains, sells, conveys and mortgages to Lender, with th ~~ty:~~

LOT: 14                 BLOCK: 1060
DATE OF DEED: 11/29/1994      RECORDED: 12/13/1994
DEED BOOK: 5832            PAGE: 52

PREMISES ARE OR WILL BE IMPROVED BY A ONE OR TWO FAMILY DWELLING.

The property is located in RICHMOND County at 77 SEYMOUR AVE , STATEN ISLAND, New York 10302.

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, wells, ditches and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described (all referred to as Property). This Security Instrument will remain in effect until the Secured Debts and all underlying agreements have been terminated in writing by Lender.

**2. MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time will not exceed $50,000.00. This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

**3. SECURED DEBTS.** This Security Instrument will secure the following Secured Debts:

    **A. Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications and replacements. A promissory note, No. 1013891-9001, dated May 6, 2005, from Mortgagor to Lender, with a loan amount of $50,000.00 and maturing on May 5, 2015.

    **B. Sums Advanced.** All sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

ADA I SERRANO
New York Mortgage
NY/4tluciano0052980000352802205040 5Y                          ©1996 Bankers Systems, Inc., St. Cloud, MN *Experts*                  Initials *AS ES*
                                                          Page 1

**4. PAYMENTS.** Mortgagor agrees that all payments under the Secured Debts will be paid when due and in accordance with the terms of the Secured Debts and this Security Instrument.

**5. WARRANTY OF TITLE.** Mortgagor warrants that Mortgagor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to grant, bargain, convey, sell and mortgage with the power of sale the Property.

**6. PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:

    A. To make all payments when due and to perform or comply with all covenants.

    B. To promptly deliver to Lender any notices that Mortgagor receives from the holder.

    C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

**7. CLAIMS AGAINST TITLE.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

**8. DUE ON SALE.** Lender may, at its option, declare the entire balance of the Secured Debts to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of the Property. This right is subject to the restrictions imposed by federal law governing the preemption of state due-on-sale laws, as applicable.

**9. WARRANTIES AND REPRESENTATIONS.** Mortgagor has the right and authority to enter into this Security Instrument. The execution and delivery of this Security Instrument will not violate any agreement governing Mortgagor or to which Mortgagor is a party.

**10. PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor will not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims, and actions against Mortgagor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender will give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property will be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

**11. AUTHORITY TO PERFORM.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor will not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

**12. DEFAULT.** Mortgagor will be in default if any of the following occur:

    **A. Payments.** Mortgagor fails to make a payment in full when due.

    **B. Insolvency.** Mortgagor makes an assignment for the benefit of creditors or becomes insolvent, either because Mortgagor's liabilities exceed Mortgagor's assets or Mortgagor is unable to pay Mortgagor's debts as they become due.

    **C. Death or Incompetency.** Mortgagor dies or is declared legally incompetent.

    **D. Failure to Perform.** Mortgagor fails to perform any condition or to keep any promise or covenant of this Security Instrument.

    **E. Other Documents.** A default occurs under the terms of any other transaction document.

    **F. Other Agreements.** Mortgagor is in default on any other debt or agreement Mortgagor has with Lender.

    **G. Misrepresentation.** Mortgagor makes any verbal or written statement or provides any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

    **H. Judgment.** Mortgagor fails to satisfy or appeal any judgment against Mortgagor.

    **I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

    **J. Name Change.** Mortgagor changes Mortgagor's name or assumes an additional name without notifying Lender before making such a change.

    **K. Property Transfer.** Mortgagor transfers all or a substantial part of Mortgagor's money or property. This condition of default, as it relates to the transfer of the Property, is subject to the restrictions contained in the DUE ON SALE section.

    **L. Property Value.** The value of the Property declines or is impaired.

    **M. Insecurity.** Lender reasonably believes that Lender is insecure.

**13. REMEDIES.** Lender may use any and all remedies Lender has under state or federal law or in any instrument evidencing or pertaining to the Secured Debts, including, without limitation, the power to sell the Property. Any

amounts advanced on Mortgagor's behalf will be immediately due and may be added to the balance owing under the Secured Debts. Lender may make a claim for any and all insurance benefits or refunds that may be available on Mortgagor's default.

Subject to any right to cure, required time schedules or other notice rights Mortgagor may have under federal and state law, Lender may make all or any part of the amount owing by the terms of the Secured Debts immediately due and foreclose this Security Instrument in a manner provided by law upon the occurrence of a default or anytime thereafter.

If there is a default, Lender may, in addition to any other permitted remedy, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder.

Upon sale of the Property and to the extent not prohibited by law, Trustee will make and deliver a deed to the Property sold which conveys absolute title to the purchaser, and after first paying all fees, charges and costs, will pay to Lender all moneys advanced for repairs, taxes, insurance, liens, assessments and prior encumbrances and interest thereon, and the principal and interest on the Secured Debts, paying the surplus, if any, to Grantor. Lender may purchase the Property. The recitals in any deed of conveyance will be prima facie evidence of the facts set forth therein.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debts after the balance is due or is accelerated or after foreclosure proceedings are filed will not constitute a waiver of Lender's right to require complete cure of any existing default. By choosing any one or more of these remedies Lender does not give up Lender's right to use any other remedy. Lender does not waive a default if Lender chooses not to use a remedy. By electing not to use any remedy, Lender does not waive Lender's right to later consider the event a default and to use any remedies if the default continues or happens again.

**14. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, Mortgagor agrees to pay all expenses of collection, enforcement or protection of Lender's rights and remedies under this Security Instrument. Mortgagor agrees to pay expenses for Lender to inspect and preserve the Property and for any recordation costs of releasing the Property from this Security Instrument. Expenses include, but are not limited to, reasonable attorneys' fees, court costs, and other legal expenses. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of the Secured Debts. To the extent permitted by the United States Bankruptcy Code, Mortgagor agrees to pay the reasonable attorneys' fees Lender incurs to collect the Secured Debts as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**15. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substance," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.

Mortgagor represents, warrants and agrees that:

A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are, and will remain in full compliance with any applicable Environmental Law.

C. Mortgagor will immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor will take all necessary remedial action in accordance with any Environmental Law.

D. Mortgagor will immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

**16. CONDEMNATION.** Mortgagor will give Lender prompt notice of any pending or threatened action by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds will be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**17. INSURANCE.** Mortgagor agrees to keep the Property insured against the risks reasonably associated with the Property. Mortgagor will maintain this insurance in the amounts Lender requires. This insurance will last until the Property is released from this Security Instrument. Mortgagor may choose the insurance company, subject to Lender's approval, which will not be unreasonably withheld. All insurance policies and renewals will include a standard "mortgage clause" and, where applicable, "loss payee clause."

Mortgagor will give Lender and the insurance company immediate notice of any loss. All insurance proceeds will be applied to restoration or repair of the Property or to the Secured Debts, at Lender's option. If Lender acquires



the Property in damaged condition, Mortgagor's rights to any insurance policies and proceeds will pass to Lender to the extent of the Secured Debts.

Mortgagor will immediately notify Lender of cancellation or termination of insurance. If Mortgagor fails to keep the Property insured Lender may obtain insurance to protect Lender's interest in the Property. This insurance may include coverages not originally required of Mortgagor, may be written by a company other than one Mortgagor would choose, and may be written at a higher rate than Mortgagor could obtain if Mortgagor purchased the insurance.

**18. ESCROW FOR TAXES AND INSURANCE.** Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

**19. CO-SIGNERS.** If Mortgagor signs this Security Instrument but does not sign the Secured Debts, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debts and Mortgagor does not agree to be personally liable on the Secured Debts. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws.

**20. OTHER TERMS.** The following are applicable to this Security Instrument:

**A. Mortgage Tax Considerations.** The Property covered by this Security Instrument is or will be improved by a one or two family residence or dwelling.

The Property covered by this Security Instrument is not real property improved by one or more structures containing in the aggregate not more than six residential dwelling units, each with separate cooking facilities.

**21. APPLICABLE LAW.** This Security Instrument is governed by the laws of New York, except to the extent otherwise required by the laws of the jurisdiction where the Property is located, and the United States of America.

**22. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** Each Mortgagor's obligations under this Security Instrument are independent of the obligations of any other Mortgagor. Lender may sue each Mortgagor individually or together with any other Mortgagor. Lender may release any part of the Property and Mortgagor will still be obligated under this Security Instrument for the remaining Property. The duties and benefits of this Security Instrument will bind and benefit the successors and assigns of Lender and Mortgagor.

**23. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Security Instrument may not be amended or modified by oral agreement. No amendment or modification of this Security Instrument is effective unless made in writing and executed by Mortgagor and Lender. This Security Instrument is the complete and final expression of the agreement. If any provision of this Security Instrument is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**24. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Security Instrument.

**25. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one party will be deemed to be notice to all parties. Mortgagor will inform Lender in writing of any change in Mortgagor's name, address or other application information. Mortgagor will provide Lender any financial statements or information Lender requests. All financial statements and information Mortgagor gives Lender will be correct and complete. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and to confirm Lender's lien status on any Property. Time is of the essence.

**SIGNATURES.** By signing, Mortgagor agrees to the terms and covenants contained in this Security Instrument. Mortgagor also acknowledges receipt of a copy of this Security Instrument.

MORTGAGOR:

ADA I SERRANO

EDWIN SERRANO

**ACKNOWLEDGMENT.**

(Individual)

STATE OF N Y , COUNTY OF RICHMOND ss.

On the 6 day of MAY , 2005 , before me, the undersigned, personally appeared ADA I SERRANO, and EDWIN SERRANO, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

My commission expires:
HANNELORE BLANCHARD
Notary Public, State of New York
No. 43-4992341
Qualified in Richmond County
Commission Expires 24-06

Notary Public - State of New York

CLSA File#    2365576  |
77 SEYMOUR AVE  |  |
STATEN ISLAND, NY  |  |  |

ALL THAT CERTAIN PLOT, PIECE OR PAREL OF LAND, WITH THE BUILDINGS AND
IMPROVEMENTS THEREON ERECTED, SITUATE, LYING AND BEING IN THE BOROUGH OF
STATEN ISLAND, COUNTY OF RICHMOND, CITY AND STATE OF NEW YORK, BOUNDED AND
DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE NORTHERLY SIDE OF SEYMOUR AVENUE DISTANT 52.22
FEET EASTERLY FROM THE CORNER FORMED BY THE INTERSECTION OF THE SAID
NORTHERLY SIDE OF SEYMOUR AVENUE AND THE EASTERLY SIDE OF RICHMOND
AVENUE;

RUNNING THENCE NORTH 16 DEGREES 25 MINUTES 04 SECONDS EAST 77.10 FEET;

THENCE SOUTH 76 DEGREES 02 MINUTES 19 SECONDS EAST 28.07 FEET;

THENCE SOUTH 16 DEGREES 25 MINUTES 04 SECONDS WEST AND PART OF THE DISTANCE
THORUGH A PARTY WALL 78.31 FEET TO THE SAID NORTHERLY SIDE OF SEYMOUR
AVENUE;

THENCE NORTH 73 DEGREES 25 MINUTES 56 SECONDS WEST ALONG THE SAID
NORTHERLY SIDE OF SEYMOUR AVENUE 38.05 FEET TO THE POINT OR PLACE OF
BEGINNING.

SAID PREMISES ALSO KNOWN AS 77 SEYMOUR AVENUE, STATEN ISLAND, NY.